**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE THE EXTRADITION OF: | No. 04-6049M-DKD |
| JEAN SUCCAR KURI | **FINDINGS OF FACT AND CONCLUSIONS OF LAW and CERTIFICATION OF EXTRADITABILITY** |
| A Fugitive from the Government of Mexico. | |

Jean Succar Kuri was provisionally arrested on or about February 5, 2004, pursuant to a complaint and provisional arrest warrant issued in the Central District of California by U.S. Magistrate Judge Andrew J. Wistrich on November 26, 2003, in accordance with 18 U.S.C. § 3184, at the request of the Government of Mexico pursuant to the Extradition Treaty between the United States and The Republic of Mexico. In this matter, the United States acts on behalf of the Mexican government. As set forth in the Amended Complaint, sworn before U.S. Magistrate Judge Virginia A. Mathis on October 12, 2004, Mexico seeks extradition pursuant to four arrest warrants:

| | |
|---|---|
| First Arrest Warrant | Third Criminal Court Judge of the Judicial District of Cancun, Quintana Roo, Mexico. Criminal case Number 300/2003 Allegations: Violations of Articles 127 (third paragraph) and 191 of the State Penal Code – Comparable Rape and Corruption of Minors |
| Second Arrest Warrant | Third Criminal Court Judge of the Judicial District of Cancun, Quintana Roo, Mexico. Criminal case Number 13/2004 Allegations: Violations of Articles 127, 129 and 191 of the State Penal Code – Comparable Rape, Sexual Molestation of Minors and Corruption of Minors |

| | |
|---|---|
| Third Arrest Warrant | Second Judge of District "A" in the State of Quintana Roo, Mexico. Criminal Case Number 31/2004<br>Allegations: Violations of Articles 201 of the Mexican Federal Penal Code – Child Pornography |
| Fourth Arrest Warrant | Third District Judge in the State of Quintana Roo, Mexico. Criminal Case Number 78/2004<br>Allegations: Violations of Article 201 of the Mexican Federal Criminal Code – Child Pornography and Corruption of Minors |

Mexico is required under the treaty to submit a formal extradition request, supported by appropriate documents, to the United States Department of State. The Department of State has certified that Mexico has presented the following documents:

    1. On April 6, 2004, the United States Department of State certified in a document bound with a gold ribbon and seal that it had received formal documentation from the Republic of Mexico requesting extradition for crimes detailed in two state warrants of arrest and one federal warrant of arrest. Exhibit A. The three arrest warrants as certified by Robin M. Bishop, Minister Counselor for Consular Affairs of the United States of America, are bound with a red ribbon and seal and are filed in this matter as Exhibits B, C and D, respectively.

    2. On September 28, 2004, the United States Department of State certified in a document bound with a gold ribbon and seal that it had received formal documentation from the Republic of Mexico requesting extradition for an additional federal warrant of arrest. Exhibit G. The second federal arrest warrant as certified by Robin M. Bishop, Minister Counselor for Consular Affairs of the United States of America, is bound with a red ribbon and seal and is filed in this matter as Exhibit G.

On February 6, 2006, Succar Kuri made his first appearance in the District of Arizona and a status hearing regarding extradition was set for February 12, 2004. The parties thereafter stipulated to numerous continuances of the extradition hearing. The Court approved these continuances in each instance for good cause shown; good cause generally associated with the complications attendant to an extradition proceeding, such as the need for translations and consideration of a foreign court's record.

On April 12, 2005, this Court held an extradition hearing and considered the evidence of criminality presented by Mexico to determine whether it was "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. The Court took the matter under advisement and did not announce its oral ruling granting extradition until a subsequent hearing on April 4, 2006. The delay from the extradition hearing until ruling deserves comment. This is especially so because much of the record and filings in this case have been sealed to protect the identities of minor children named in papers filed with the Court. As will be addressed in more detail below, much of this delay was associated with Respondent's allegations of prosecutorial irregularities and witness recantations. The Court concluded that it should afford additional time to Respondent to allow these allegations to be presented to the Court. The Court was inclined to indulge this additional time because the record was, if not irregular, at the least imperfect. Some of the imperfections were doubtless the product of translation errors, but the absence of care in this regard did incline the Court to examine the record quite closely. Moreover, an extraordinarily severe hurricane season caused some further delay because of disruptions to travel and communications in the requesting Mexican State. In the end and through the passage of considerable time, the Court believes it has given Respondent a full and fair opportunity to present the allegations of prosecutorial irregularities and witness recantation and thus it now issues its written ruling following the April 4, 2006 hearing.[1]

Based upon the hearing and all of the subsequently submitted exhibits, the Court finds the fugitive extraditable, and certifies that conclusion to the United States Secretary of State, who will then decide whether to surrender Jean Succar Kuri.

**I.    Elements Necessary for Extradition**

---

[1] At the April 4, 2006 hearing, the Court directed the United States to file proposed findings of fact and conclusions of law and provided for Respondent to have one week to file any objections to the proposed findings. Respondent declined to file any objections to the proposed findings, which are adopted in part in this Order.

To accomplish extradition, the United States on behalf of Mexico must demonstrate: (1) that the judicial officer is authorized to conduct extradition proceedings; (2) that the court had jurisdiction over the fugitive; (3) that the applicable treaty was in full force and effect; (4) that the crimes for which surrender was requested were covered by the treaties; and (5) that there is probable cause to believe that a crime was committed and that the person before the court committed it. *Ornelas v. Ruiz*, 161 U.S. 502 (1896). *Accord, Bingham v. Bradley,* 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1980).

A. Authority of the judicial officer.

Congress has specifically conferred upon United States Magistrate Judges the authority to conduct extradition proceedings where the magistrate judge is authorized to do so by a court of the United States. 18 U.S.C. § 3184. District of Arizona Criminal Local Rule 57.6(d)(15) provides this specific authority: "[F]ull-time Magistrate Judges in the District of Arizona shall perform the following duties . . .[c]onduct extradition proceedings in accordance with 18 U.S.C. § 3184."

B. Jurisdiction over the fugitive.

This element is satisfied because the Respondent is before the court. *See, In re Pazienza,* 619 F.Supp. 611 (S.D.N.Y. 1985). Respondent is in custody and appears before the Court as the result of the service of the provisional arrest warrant issued by this Court.

C. Treaty in full force and effect.

The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances in which a treaty is in force between the requesting state and the requested state, and several cases have so held. *See, e.g., Argento v. Horn,* 241 F.2d 258 (6th Cir. 1957). As part of its proof, the Government has provided a declaration from an attorney in the Office of the Legal Adviser of the Department of State attesting that the treaty is in full force and effect. The Department of State's opinion in this sphere is entitled to deference from the Court. *Galanis v. Pallanck*, 568 F.2d 234 (2nd Cir. 1977); *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969), *cert. denied*, 398 U.S.

1  903 (1970). *Ex A, Declaration of Denise Manning, pages 1-3 and the Treaty, pages 35-56.*
2  Moreover, Respondent has not challenged the existence of this element.

   D.  Treaty Applies to the Crimes Charged.

The treaty provides for the return of fugitives charged with or convicted of a crime in the requesting state. The crimes identified in the Amended Complaint and request for extradition are covered by Article 2, paragraphs (1), (3) and (4)(a) of the Extradition Treaty between the United States and Mexico and also by Item number 12 of the Treaty's Appendix. Under Article 2, paragraphs (1), (3) and (4)(a) and Item 12 of the list of offenses which comprise the Appendix to the Treaty, the charges contained in the request from Mexico are for extraditable offenses. The documents submitted by Mexico, the requesting state, have established that the fugitive has been charged with the crimes recited in the Amended Complaint.

The Supreme Court noted in *Collins v. Loisel*, 259 U.S. 309 (1922) that:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added). *Accord, Messina v. United States,* 728 F.2d 77 (2nd Cir. 1984); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *United States v. Stockinger*, 269 F.2d 681, 687 (2nd Cir. 1959); *Di Stefano v. Moore*, 46 F.Supp 308 (E.D.N.Y.), *aff'd*, 46 F. 2d 310 (2nd Cir. 1930), *cert. denied*, 283 U.S. 830 (1931). A court's analysis of the question of dual criminality is subject to the general requirement that the court "approach challenges to extradition with a view toward finding the offense within the treaty." *McElvy v. Civiletti*, 523 F.Supp. 42, 48 (S.D.FLa. 1981); 477 F.2d 333 (5th Cir.), *cert. denied*, 414 U.S. 847 (1973). Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts. *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969), *cert. denied*, 398 U.S. 903 (1970); *In re Ryan, supra*, 360 F.Supp. at 272, n.4; *In re Extradition of D'Amico*, 177 F.Supp. 648, 653 n.7 (S.D.N.Y. 1959), *appeal dismissed*, 286 F.2d 320 (2nd Cir.), *cert. denied*, 366 U.S. 963 (1961). By forwarding the formal documents supporting the extradition request of the Republic of Mexico, and in express language contained in the

- 5 -

certifications provided by the State Department, the United States has determined that the crimes described in the Mexican arrest warrants comply with the dual criminality requirements of the Treaty. There does not appear to be any credible challenge to the dual criminality of the alleged offenses. The allegations of corruption of minors and child pornography are crimes punishable for longer than one year and are crimes in the United States of America. Defendant asserts a number of defenses to the prosecutions for the child pornography offenses but these challenges are beyond the purview of this Court. It is for the Courts with jurisdiction in these matters, in the Republic of Mexico, to consider any such defenses.

E. Competent legal evidence.

This is the familiar requirement of probable cause to believe that a crime was committed and that the person before the court committed it. The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. 309, 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a final trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976). *See also, Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962);

*Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872 (1964); *In re Ryan*, 360 F.Supp. 270, 273 (E.D.N.Y.), *aff'd*, 478 F.2d 1397 (2nd Cir. 1973).

## II.     Findings of Fact and Conclusions of Law

The specific findings of fact upon which the Court has relied are specified below and on the record at the April 4, 2006 hearing.

The First Arrest Warrant (Exhibit B16) alleges violations of Articles 127 (comparable rape) and 191 (corruption of minors) of the State Penal Code for conduct commencing in 1996 against four minor children. The Third Criminal Court for the District of Cancun, Quintana Roo issued its arrest warrant upon consideration of a number of statements of the victims. Respondent has presented recantations of these statements as well as evidence that the statements were presented by a prosecutor who was herself arrested pursuant to allegations that she falsified declarations of child victims in other cases. The Court has allowed Respondent to present this evidence to allow the Court to determine whether the arrest warrants are supported by probable cause. "'Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible.'" *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005), *quoting Mainero v. Gregg*, 164 F.3d 1199, 1297 n. 7 (9th Cir. 1999). The basis for this rule is that the extradition court is not in any position to weigh or consider conflicting evidence. The Court cannot and should not conduct a remote trial. If this threshold of probable cause is met, the respondent must be returned to the prosecuting country for a trial where the local trier of fact can properly resolve the conflicting issues of proof and credibility. It should be added that it is conceivable that recantation evidence could completely obliterate probable cause (see *In Re the Matter of Extradition of Contreras*, 800 F.Supp. 1462 (S.D. Texas 1992)) and it is for this reason that the Court has allowed Respondent the opportunity to develop this record. However, after carefully

considering all of the evidence and reading every word[2] of the voluminous record, the Court does not believe that Respondent has completely obliterated probable cause even upon a consideration of the possible recantations and alleged prosecutorial misconduct.

Respondent attacks probable cause with statements and recantations, and in one instance a partial re-recantation. This controverting evidence does not explain away or completely obliterate probable cause. The statements simply conflict. There is no way for the Court short of trial to determine where the truth lies. With respect to the First Warrant, the Court finds that it is supported by probable cause and a certification of extradition will issue.

The Second Arrest Warrant (Exhibit C18) alleges violations of Articles 127 (comparable rape), 129 (indecent molestation of children) and 191 (corruption of minors) of the State Penal Code for conduct commencing in February and March 2003. The Third Criminal Court for the District of Cancun, Quintana Roo issued this arrest warrant upon consideration of statements of victims and others that Respondent inserted his fingers into the vaginal openings of minor children, that he engaged in erotic sexual contact with a child under the age of fourteen and that he did through this and other conduct described seek to sexually corrupt minors. Respondent challenges this arrest warrant with the claims of prosecutorial misconduct asserted against the First Arrest Warrant. Again, Respondent's evidence merely controverts or raises a defense and does not completely obliterate probable cause. With respect to the Second Warrant, the Court finds that it is supported by probable cause and a certification of extradition will issue.

The Third Arrest Warrant (Exhibit D13) alleges violations of Article 201 of the Federal Criminal Code (child pornography) commencing in or about 1996 and continuing to in or about 2003. The Second Judge of District "A" of the State of Quintana Roo considered victim statements that Respondent photographed and filmed minor children engaging in sexual activity.

---

[2]The Court did not review materials, such as audio cassettes, which were submitted without an English translation nor did it review certain materials contained in Government's Exhibits Q, R, S, T and U (as is more fully explained in a separate Order issued this same day). In addition, the Court was unable to open the VCD which the Government submitted during the April 12, 2005 Extradition Hearing as its Exhibit D-14a.

1 These statements included allegations that Respondent maintained a hidden video camera in his
2 master bedroom at his Cancun home. The victim witnesses also described child pornography
3 maintained by and shown to them by Respondent. The issuing court also considered evidence
4 of internet transmission of child pornography. Respondent attacks this arrest warrant on the
5 same grounds as above and also asserts an ex post facto defense which does not completely
6 obliterate probable cause. With respect to the Third Arrest Warrant, the Court finds that it is
7 supported by probable cause and a certification of extradition will issue.

8 The Fourth Arrest Warrant (Exhibit G18) alleges three violations of Article 201 of the
9 Mexican Federal Penal Code (child pornography and corruption of minors) in "that during the
10 period 1997 to 2003, the [Respondent] forced and induced [three minor children] to perform
11 acts of a lewd, sexual or exhibitionist nature, in order to record them on video, and for this
12 reason he sought to corrupt the minors." Exhibit G1. These allegations are supported by the
13 statements of the alleged victims as well as photographs of naked minor children for which
14 probable cause exists to believe that the photographs were taken by Respondent in his bedroom
15 at his home in Cancun. In addition, the submission of a videotape which depicts Respondent
16 controlling a video camera in his bedroom supports a finding of probable cause that he used
17 such a device in furtherance of the alleged offenses. With respect to the Fourth Arrest Warrant,
18 the Court finds that it is supported by probable cause and a certification of extradition will issue.

## CONCLUSION

20 Extradition hearings are often characterized as *sui generis*. *See, e.g., Hooker v. Klein,*
21 *supra*, 573 F.2d at 1369. Despite the unusual nature of the proceedings, there is no mystery to
22 the law of extradition: it is regulated by a body of well-settled precedent, much of it originating
23 with the Supreme Court. *Ahmad v. Wigen, supra*, 910 F.2d at 1065. Although other elements
24 must also be present, the paramount issue of every extradition proceeding is whether there exists
25 probable cause to believe that the fugitive has committed the crimes charged in the requesting
26 country. The latter determination is the kind that courts make in a preliminary hearing under
27 Rule 5.1, Fed.R.Crim.P. *Ward v. Rutherford, supra*, 921 F.2d 286 (D.C. Cir. 1990). The
28 extradition hearing must not be converted into a trial on the merits, and the rules ordinarily

applicable in such trials are not used. The extraditee's opportunities to oppose the request are limited because his defenses will be aired in the requesting country. The Court's findings of fact and conclusions of law have dealt with each of the elements listed above, and with each offense for which extradition is requested.

Based upon these findings of fact and a review of the evidence described herein, the Court makes the following conclusions of law. The Court, as a properly appointed U.S. Magistrate Judge, is a judicial officer authorized to conduct extradition proceedings, pursuant to 18 U.S.C. § 3184 and the Local Rules of Practice.

The court has jurisdiction over the fugitive because he was in custody in the District of Arizona and has been brought before this Court as the result of the Provisional Arrest Warrant issued in this action. As the result of the personal jurisdiction over Jean Succar Kuri, the District Court of Arizona has jurisdiction to decide whether Jean Succar Kuri is extraditable. *See, In re Pazienza*, 619 F.Supp. 611 (S.D.N.Y. 1985).

The Court has found that the applicable treaty is in full force and effect and the crimes for which surrender was requested are covered by the treaty. From a review of the documents submitted, it is clear there are criminal charges pending in the requesting state. There is competent legal evidence which supports the issuance of arrest warrants for Jean Succar Kuri for the crimes alleged in the Amended Complaint. The evidence is sufficient to establish probable cause to believe that the crimes were committed and that the person before the court, Jean Succar Kuri, committed them. *United States v. Barr*, 619 F.Supp. 1068, 1070 (E.D.Pa. 1985). Based upon these findings of fact and conclusions of law, the Court finds that there is sufficient cause to determine Jean Succar Kuri is extraditable for each of the arrest warrants issued by the courts of the requesting country. *Ornelas v. Ruiz*, 161 U.S. 502 (1896). *Accord, Bingham v. Bradley*, 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1980).

**CERTIFICATION OF EXTRADITABILITY**

It is the Order of this Court that the Clerk shall transmit this Certification of Extraditability to:

    U.S. Department of State
    Office of Legal Advisor
    Law Enforcement & Intelligence
    Attention: Winnie Fuentes
    2201 C. Street N.W., Room 5419
    Washington, D.C. 80520

for the determination of whether Jean Succar Kuri should be surrendered to the Republic of Mexico.

DATED this 16th day of May, 2006.

_____
David K. Duncan
United States Magistrate Judge